IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Colette Deeann O'Kelley,<br><br>      Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security,[1]<br><br>      Defendant. | Civil Action No. 6:12-2553-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

  This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

  The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

  The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits in November 2008, alleging that she became unable to work on October 31, 2007. She later amended the alleged onset date to February 1, 2009. The applications were denied initially and on reconsideration by the

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this case.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Social Security Administration. On December 7, 2009, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Karl S. Weldon, an impartial vocational expert, appeared on September 9, 2010, considered the case *de novo*, and on January 3, 2011, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on August 14, 2012. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.
>
> (2) The claimant has not engaged in substantial gainful activity since February 1, 2009, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).
>
> (3) The claimant has had the following severe impairments: chronic obstructive pulmonary disease (COPD); diabetes mellitus; major depressive disorder; and obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). I specifically find that the claimant could lift/carry no more than a maximum of 10 pounds at one time and occasionally lift/carry objects weighing less than 10 pounds as exemplified by articles such as docket files, ledgers, and small

2

tools. Claimant could sit up to six hours of an eight-hour workday, and stand/walk up to two hours out of an eight-hour workday. Claimant could push/pull with the upper and lower extremities bilaterally in a manner consistent with the exertional demands of sedentary work. Claimant could occasionally climb ladders, ropes, and scaffolds, and the claimant could frequently climb ramps and stairs, as well as frequently balance, stoop, kneel, crouch, and crawl. Claimant should avoid concentrated exposure to workplace hazards, in addition to avoiding concentrated exposure to irritants, such as fumes, odors, dust, gases, tobacco smoke, and areas with poor ventilation. Claimant could maintain appropriate concentration, persistence, and pace for two-hour periods while performing jobs in a stable environment that required no more than simple, routine, repetitive tasks and no more than occasional public contact. Claimant could interact appropriately with coworkers and supervisors.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

(7) The claimant was born on July 18, 1965, and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

(8) The claimant has limited education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that

exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a)) 416.969 and 416.969(a))..

(11)   The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2009, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. If an individual is found

4

not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

5

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was 43 years old on the alleged disability onset date and 45 years old on the date of the ALJ's decision. She finished ninth grade and does not have a GED (Tr. 93). The plaintiff is 5'5" and weighs 224 pounds (Tr. 76-77). She testified that her weight makes it more difficult for her to breathe (Tr. 95). The plaintiff testified that she does not drink, but she does smoke. She is trying to quit smoking but stated that she is using food as a replacement (Tr. 77-78). The plaintiff testified that she has attempted to use Nicorette patches, but she has a heart condition, and the patches cause her heart to race (Tr. 78).

The plaintiff last worked in January 2009 as a waitress at Waffle House. She testified that she was fired because she was unable to perform her duties (Tr. 78-79). She was unable to grip objects with her hands (Tr. 79, 87-88). The plaintiff testified that she had carpal tunnel syndrome in her hands – primarily her right and that her hands sometimes go totally numb so that she cannot hold anything (Tr. 87-88, 517) In 2004, the plaintiff worked as a sander and polisher but had problems with her hands holding the sandpaper (Tr. 80). In 1995, she worked in shipping and receiving at Big Lots (Tr. 81)

In her hearing testimony, the plaintiff primarily complained of shortness of breath, leg swelling, and pain. (Tr. 81, 86). She also stated that she has migraines most days. The plaintiff is a diabetic and takes injections of insulin (Tr. 85). The plaintiff also suffers from depression, having first sought medical care in 1992 (Tr. 89-91). She leaves

her home about once a week to go to the doctor's office or to the grocery store. She goes to church about twice per month (Tr. 91, 101)

Michael Parker, Charlotte A. Bagwell, and Jennifer Bagwell in 2010 wrote letters to the Social Security Administration ("SSA") corroborating the plaintiff's testimony and describing her various limitations (Tr. 257-59)

On April 20, 2009, the plaintiff was evaluated for the Social Security Administration by Patricia Crawford, M.D. (Tr. 490-91). Dr. Crawford acknowledged most of the plaintiff's medical problems including blurred vision, dyspnea at rest and with exertion, chest pain, dyspnea lying down, heart racing, palpitations, leg swelling, leg pain with exertion, joint pain, swelling, muscle pain, and back pain (Tr. 490). Dr. Crawford also noted the plaintiff had nervousness, depression, difficulty going to sleep, difficulty with memory, problem solving, headaches, dizziness, fatigue, and weight gain. Dr. Crawford stated the plaintiff had diabetes, hypertension, congestive heart failure, chronic obstructive pulmonary disease ("COPD"), gastroesophageal reflux disease ("GERD"), and headaches. Dr. Crawford stated, "I do believe that her current disabilities would preclude her from performing any type of work that's not sedentary" (Tr. 491)

The plaintiff's treatment records at Greer Mental Health show that she suffers from a major depressive disorder (Tr. 408-20, 590-91, 693). On January 27, 2009; July 13, 2009;and April 13, 2010, she had a Global Assessment of Functioning ("GAF") score of 58, indicating "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers) (Tr. 418, 590, 693)

The vocational expert ("VE") testified that the plaintiff would not be able to work as a dishwasher if she was unable to be exposed to high humidity or temperature extremes (Tr. 112-13). The VE further testified that the plaintiff would not be able to work as an assembler or a machine operator if the use of her dominant hand for gripping,

7

grasping, and handling was reduced to occasional (Tr. 113-14). He further testified there would be no work for her if she had to have her legs elevated two feet off the floor (Tr. 114). Finally, the VE testified that if the plaintiff had at least one work shift per week that was interrupted because she had to leave before her shift was over or did not show up for work, there would be no work that she could do (Tr. 116).

**ANALYSIS**

The plaintiff argues the ALJ erred in (1) mischaracterizing and misstating the record in significant aspects and (2) failing to make adequate credibility findings with regard to her testimony. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . .
> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

8

> The court further acknowledged:
>
>> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the

9

finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The plaintiff testified that she had a number of limitations, including the inability to work in humidity due to shortness of breath. The plaintiff testified that her hands give out a lot, and, when she worked at Waffle House, she could not hold on to a coffeepot. She further testified that when she tried to work her legs and feet swelled so much that she could hardly walk, and she has migraine headaches every day, which require to go in a dark and quiet room (Tr. 79-83).

The ALJ recognized that the plaintiff had significant work-related limitations due to her impairments. To account for these limitations, the ALJ restricted the plaintiff to performing a range of work at the sedentary exertion level (Tr. 22). The ALJ concluded that the plaintiff's complaints were not entirely credible, citing a number of reasons for his finding (Tr. 22-33). The ALJ made these findings in three areas. First, he noted that there were inconsistencies in the record, both medical and non-medical, that did not support the plaintiff's complaints (Tr. 25-31). Included in this section was the conclusion that the plaintiff's activities, i.e., attending church twice a month, shopping, driving or riding in a car, socializing with her family, eating out, going outside alone, cleaning, doing laundry, caring for her dogs, handling her finances, and getting along with others, were inconsistent with her complaints (Tr. 21, 30). The ALJ found that the plaintiff's complaints of shortness of breath, diabetic symptoms, leg pain, and mental impairment symptoms were undermined by records that showed her symptoms were temporary, responded well to treatment, and were well controlled (Tr. 26-30). Second, in a section titled "Claimant's Credibility" the ALJ noted that there were other inconsistencies in the record that undermined the plaintiff's complaints (Tr. 31). The ALJ noted that the plaintiff's breathing problems were exacerbated by obesity and smoking, but she failed to follow her physicians' advice to stop smoking and to change her diet (Tr. 26, 31). The ALJ also noted that the plaintiff's complaint that she was unable to go outside was inconsistent with her report that she was able to work in her rose garden (Tr. 31).

Third, in a section titled "Weight to Opinions," the ALJ noted that no treating or examining physician indicated the plaintiff was disabled, and, in fact, Dr. Crawford, the only examining physician to issue an opinion, opined that the plaintiff was precluded from anything greater than sedentary work (Tr. 31-32; *see* Tr. 491). The ALJ accorded Dr. Crawford's opinion great weight, finding it was consistent with the evidence in the record as a whole (Tr. 31). Based upon this analysis, the ALJ concluded that the plaintiff's

11

complaints were not entirely credible and that she retained the residual functional capacity to perform a range of sedentary work.

While the plaintiff argues that the ALJ "committed reversible error by mischaracterizing and misstating the record in significant aspects" (pl. brief at 5), she does not cite to any specific mischaracterizations or misstatements in the decision. The plaintiff does argue that the ALJ erred in considering her activities of daily living, claiming that "[t]he ALJ is essentially requiring [her] to prove abject helplessness before she can receive SSA disability benefits" (pl. brief at 5). She further argues that her daily activities do not constitute substantial evidence that she can engage in substantial gainful activity (*id.* at 6). However, the ALJ did not conclude that the plaintiff's ability to perform certain activities meant that she was able to perform substantial gainful employment. Instead, the ALJ considered the plaintiff's activities when determining the severity of her mental impairments and as one factor, of many, in determining her residual functional capacity (Tr. 21, 30). The ALJ stated in the decision, "The ability to perform daily activities is not dispositive of the issue of disability; however, the capacity to perform a wide array of daily activities is some evidence of the appropriateness of the residual functional capacity" (Tr. 30). As argued by the Commissioner, consideration of the plaintiff's daily activities was appropriate in evaluating the plaintiff's credibility and residual functional capacity.

The plaintiff has not alleged that the other reasons the ALJ cited for finding her not credible were erroneous. However, she argues that "[t]he ALJ makes the blanket conclusion on page 12 of the order, [**using boilerplate language**]" that her complaints were not credible (pl. brief at 6) (punctuation and emphasis in original). The plaintiff focuses on one paragraph of the ALJ's order, which contains language culled from the regulations and rulings and is consistent with Fourth Circuit precedent, while ignoring the many other reasons the ALJ gave for not finding her credible, as discussed above (Tr. 23-31). The plaintiff cites case law (pl. brief at 7) from the Seventh and Tenth Circuits for

12

the proposition that "boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)). While the ALJ here did use some boilerplate language in the decision denying the plaintiff's claim, the ALJ gave specific reasons to support his credibility finding, as discussed above. Accordingly, this argument is without merit.

The plaintiff also claims that her testimony was entitled to substantial credibility due to her work history (pl. brief at 8). She cites to a case from the Third Circuit, *Dobrowolsky v. Califano*, 606 F.2d 403 (3rd Cir. 1979), which, as argued by the Commissioner, not only is not precedential, but it is also inapplicable here as the claimant in *Dobrowolsky* had worked 29 years continuously and 15 for the same employer. *See* 606 F.2d at 409. By contrast, in 16 of the 30 years before she filed her application, the plaintiff had earnings of less than $2,000, and her maximum earnings during that time was less than $9,000 (Tr. 168-69). Based upon the foregoing, this argument is without merit.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

October 25, 2013
Greenville, South Carolina

13